[No. 78355-1.   En Banc.]
Argued March 22, 2007.     Decided October 25, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. GORDON DAVID BERGSTROM, *Petitioner*.

*Jason B. Saunders* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Interim Prosecuting Attorney,* and *Scott F. Leist* and *James M. Whisman, Deputies,* for respondent.

¶1 FAIRHURST, J. — Gordon Bergstrom appeals his sentence for first degree unlawful possession of a firearm, arguing that the sentencing court incorrectly placed the burden on him to prove that his prior convictions encompassed the same criminal conduct. At his sentencing hearing, Bergstrom, although represented by counsel, argued pro se that some of the prior crimes included in his criminal history involved same criminal conduct, in essence disputing the standard sentence range presented in both the State and defense presentence reports.[1] The sentencing court refused to deviate from that standard range because the court did not have evidence demonstrating that any of his prior convictions constituted same criminal conduct. We hold that the State has the burden of proving prior criminal history and remand for resentencing. Additionally, given the unique facts of this case, we hold that both parties may present new evidence relating to Bergstrom's prior convictions and affirm the Court of Appeals.

---

[1] *See* RCW 9.94A.525(5)(a)(1).

## I. FACTUAL AND PROCEDURAL HISTORY

¶2 On April 15, 2004, a jury convicted Bergstrom of first degree unlawful possession of a firearm. Sentencing hearings were scheduled and then continued on April 22, June 11, July 30, and August 27, 2004, before the first hearing was finally held on November 5, 2004. While it is unclear why each hearing was continued, the record does show that at least one of the hearings was continued because of Bergstrom's medical problems. Bergstrom also changed attorneys between the first and last scheduled sentencing hearing dates.

¶3 Prior to sentencing, both the State and defense counsel submitted sentence recommendations. The State's presentence report stated that Bergstrom's criminal history included 11 felony convictions, a seriousness level of VII, and a standard sentence range of 87 to 116 months. The defense presentence report agreed that Bergstrom's standard sentence range was 87 to 116 months.

¶4 At the November 5, 2004 sentencing hearing, Bergstrom's attorney argued for a sentence less than the statutory minimum based on Bergstrom's poor health. Bergstrom's attorney also requested that Bergstrom be placed on electronic home monitoring (EHM). During this hearing, neither Bergstrom nor Bergstrom's attorney disputed the State's representation of his criminal history, the offender score of 11, or the standard sentence range of 87 to 116 months. The sentencing court denied the exceptional mitigated sentence request but continued the hearing to allow Bergstrom's attorney time to determine whether Bergstrom was eligible for EHM.

¶5 At the November 17, 2004 sentencing hearing, both the State and Bergstrom's attorney agreed that EHM was not available to Bergstrom. During this hearing, Bergstrom argued pro se that his offender score was 7, not 11, because some of his prior crimes encompassed the same course of criminal conduct. Bergstrom's attorney did not join her

client's argument; instead she stated, "I believe he believes that his—some of his priors count as same criminal conduct. I've actually looked at this issue, and I'm not going to take a position contrary to my client's. I'll let him make his argument." Verbatim Report of Proceedings (VRP) (Nov. 17, 2004) at 4. The November 17, 2004 hearing was the first time the State's offender score calculation was disputed.

¶6 In response to Bergstrom's pro se argument, the State made three arguments. First, prior convictions are presumed not to encompass the same criminal conduct unless an express finding was made at the time of the prior sentencing. Second, Bergstrom's argument was untimely because the sentencing hearing had already been continued multiple times and this issue had not been raised previously. Third, Bergstrom had no right to hybrid representation, so if he wanted to proceed pro se, he would be required to dismiss his attorney.

¶7 Bergstrom's attorney did not respond to the prosecutor's arguments, did not support or make her client's argument, and did not object to the offender score calculation of 11. After the court asked Bergstrom's attorney if she was objecting to her client's position, she stated, "I've really never been in this situation before, your Honor. I feel like I cannot take a position contrary to my client's. . . . I could be wrong about the same criminal conduct regarding the forgeries." *Id.* at 7.

¶8 In response to the court's questions, the State contended that the defense was required to present some evidence that the prior crimes encompassed the same criminal conduct. Following the State's representation, the court determined that it had insufficient evidence to make a same criminal conduct finding. Bergstrom then asked if his attorney could get the prior judgments and sentences to provide the court with additional information. The sentencing judge responded that he was reluctant to continue the sentencing hearing again given the previous continuances and advised Bergstrom of his right to "some post-sentencing relief of some sort." *Id.* at 10.

¶9 The sentencing judge sentenced Bergstrom to 87 months based on an offender score of 11 given the following criminal history: forgery (Sept. 9, 1999); second degree possession of stolen property (July 16, 1999); second degree theft (May 13, 1994); forgery (Nov. 4, 1994); forgery (Nov. 4, 1994); forgery (Nov. 4, 1994); Violation of the Uniform Controlled Substances Act (VUCSA), chapter 69.50 RCW (May 7, 1990); VUCSA (May 7, 1990); forgery (May 7, 1990); forgery (May 7, 1990); and first degree robbery (Apr. 9, 1984). Clerk's Papers at 31.

¶10 In an unpublished opinion, the Court of Appeals affirmed Bergstrom's conviction but remanded for resentencing, permitting either party to introduce evidence. *State v. Bergstrom*, noted at 130 Wn. App. 1037, 2005 Wash. App. LEXIS 3399, 2005 WL 3150315. We granted Bergstrom's subsequent petition for review on the issue of whether the State may present additional evidence at resentencing. *State v. Bergstrom*, 158 Wn.2d 1010, 145 P.3d 1214 (2006).

## II. ISSUE

¶11 Given these unique circumstances—where defense counsel acknowledged the offender score, defense counsel never retracted the acknowledgment, and the only objection was a pro se argument at a hearing to determine the eligibility for EHM after repeated continuances—is it inequitable to deny the State an opportunity to prove the existence of Bergstrom's prior convictions at the resentencing hearing?

## III. ANALYSIS

¶12 We review a sentencing court's calculation of an offender score de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). Generally, the trial court calculates an offender score by adding together the current offenses and the prior convictions. RCW 9.94A.589(1)(a); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). But if the trial

court finds that some of the prior offenses encompass the same criminal conduct, then those offenses count as only one crime. RCW 9.94A.525(5)(a)(i).

¶13 The State bears the burden of proving the existence of prior convictions by a preponderance of the evidence. *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005); *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002). The best evidence to establish a defendant's prior conviction is the production of a certified copy of the prior judgment and sentence. *Lopez*, 147 Wn.2d at 519 (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)). Where the sentencing court's offender score determination is challenged on appeal for insufficient evidence of prior convictions, the case law provides three approaches to analyze the issue, assuming the defendant has not pleaded guilty.[2]

¶14 First, if the State alleges the existence of prior convictions at sentencing and the defense fails to "specifically object" before the imposition of the sentence, then the case is remanded for resentencing and the State is permitted to introduce new evidence. *Id.* at 520. For example, in *Ford*, the State alleged that the defendant's out-of-state crimes were properly classified as felony crimes under Washington law. 137 Wn.2d at 475. The defense did not object, and the State did not present evidence to support the classification. *Id.* On appeal, Ford challenged the classification and this court reversed and remanded, permitting the State to present new evidence at resentencing because the defendant failed to specifically put the court on notice of any apparent defects. *Id.* at 476.

¶15 Second, if the defense does specifically object during the sentencing hearing but the State fails to produce *any* evidence of the defendant's prior convictions, then the State may not present new evidence at resentencing. *Id.*; *Cadwallader*, 155 Wn.2d at 877-78. After the defense spe-

---

[2] On a guilty plea pursuant to a plea agreement, the defendant is required to stipulate to his history and bears the burden of later discovered history. *Cadwallader*, 155 Wn.2d at 875; RCW 9.94A.441.

cifically objects, putting the sentencing court on notice that the State must present evidence, the State is held to the initial record on remand. *Ford*, 137 Wn.2d at 485.

¶16  For example, in *Lopez*, the State asked the sentencing court to impose a life sentence under the Persistent Offender Accountability Act. 147 Wn.2d at 518. The defense objected that the State had not provided evidence of Lopez's prior convictions. *Id.* The State argued that the objection was untimely and offered to present evidence, but the court sentenced Lopez without evidence of the prior crimes. *Id.* On appeal, this court held that the State was not entitled to present new evidence at resentencing because the defense specifically objected and the objection was specific enough to notify the sentencing court of the State's obligation to provide evidence of the prior convictions. *Id.* at 521.

¶17  Third, if the State alleges the existence of prior convictions and the defense not only fails to specifically object but agrees with the State's depiction of the defendant's criminal history, then the defendant waives the right to challenge the criminal history after sentence is imposed. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). More specifically, a defendant waives the right to argue on appeal that his crimes constitute the same criminal conduct after the defense agrees in the defendant's own presentence memorandum that the criminal history as reported is correct. *Id.* at 875; *State v. Nitsch*, 100 Wn. App. 512, 997 P.2d 1000 (2000). Sentencing courts can rely on defense acknowledgment of prior convictions without further proof. Former RCW 9.94A.530(2) (2002); *Cadwallader*, 155 Wn.2d at 873. Acknowledgment includes not objecting to information included in presentence reports. Former RCW 9.94A.530(2); *Cadwallader*, 155 Wn.2d at 874.

¶18  The facts of this case do not fall neatly into any one of these three categories because (1) the defense presentence report agreed with the State's standard sentence range calculation; (2) Bergstrom's attorney did not object to the standard range calculation; (3) Bergstrom did make a pro se objection as to whether his prior convictions

constituted same criminal conduct, but he objected only at the November 17, 2004 hearing, which had been continued from November 5, 2004 to address his eligibility for EHM; and (4) the sentencing court failed to hold an evidentiary hearing.

¶19 The State reasonably relied on Bergstrom's attorney's acknowledgment of the standard sentence range and offender score. The defense presentence report affirmatively agreed with the State's calculated standard sentence range of 87 to 116 months. Implicitly, Bergstrom's attorney also agreed with the offender score calculated by the State. Under the sentencing grid of the Sentencing Reform Act of 1981, chapter 9.94A RCW, when the current crime a defendant is being sentenced for has a seriousness level of VII—like first degree unlawful possession of a firearm—the only offender score that produces a standard sentence range of 87 to 116 months is an offender score of 9 or higher. RCW 9.94A.510 tbl. 1. Because both the State and defense presentence reports concluded that Bergstrom's standard sentence range was 87 to 116 months, both parties must have agreed that Bergstrom's offender score was 9 or above.

¶20 Not only did Bergstrom's attorney initially agree in the presentence report, she also did not object to the State's offender score calculation during either the November 5 or November 17, 2004 sentencing hearings. The dissent suggests that the fact that Bergstrom's counsel acknowledged the offender score is irrelevant because Bergstrom made a clear effort to contradict his attorney and his attorney was obligated to abide by her client's decisions concerning the objectives of litigation under RPC 1.2. *See* dissent at 99. However, the obligation that Bergstrom's attorney had to Bergstrom is not at issue in this case. What is at issue is whether, given the defense presentence report and defense counsel's failure to object, the State was on notice of the need to provide sentencing evidence against Bergstrom. When a defendant is represented by competent counsel, the attorney has the ultimate authority in deciding which legal arguments to advance. *See State v. Cross*, 156 Wn.2d 580, 606, ¶¶ 38-39, 132 P.3d 80 (2006).

¶21 In this case, the record indicates that Bergstrom's attorney elected not to dispute the State's offender score calculation. Additionally, defense counsel did not join Bergstrom's argument on November 17, 2004, as evidenced by her statement that she had looked at the issue and would "let him make his argument." VRP (Nov. 17, 2004) at 4. The State is entitled to rely on representations advanced by defense counsel, and the State reasonably relied on the absence of any prior defense objection to the State's calculated offender score during the previous November 5, 2004 sentencing hearing.

¶22 Despite the fact that Bergstrom's attorney acknowledged the offender score in her presentence report and did not reverse her position during the hearings, Bergstrom personally disputed the validity of the State's offender score calculation by specifically arguing that some of his prior offenses constituted same criminal conduct.[3] However, the timing of Bergstrom's pro se argument did not sufficiently notify the State of the need to present evidence regarding the prior convictions because at the time Bergstrom raised the issue, defense counsel had already acknowledged the prior convictions, the offender score, and the standard sentence range at the previous November 5, 2004 sentencing hearing.

¶23 Even if the timing of Bergstrom's pro se argument had been more appropriate, the State would naturally have been unsure whether Bergstrom's pro se argument or his attorney's acknowledgment governed whether the State needed to provide sentencing evidence. Moreover, Bergstrom disputed his offender score only after the hearing was continued from November 5 to November 17, 2004, for the limited purpose of determining his eligibility for EHM. Consequently, because of defense counsel's earlier acknowledgment and the limited purpose for continuing the sentencing hearing, the State was not prepared to prove the

---

[3] We assume that Bergstrom's objection was specific without deciding the matter.

validity of Bergstrom's offender score at the November 17, 2004 hearing.

¶24 While the sentencing court could have declined to consider the pro se motion because Bergstrom was represented by competent counsel at the hearing, the sentencing court did consider and rule on Bergstrom's pro se motion. Following Bergstrom's pro se argument, the sentencing court erred when it failed to hold an evidentiary hearing and instead sentenced Bergstrom without determining if his prior convictions were same criminal conduct. Once the defense "disputes material facts, the sentencing court either must not consider the facts, or it must grant an evidentiary hearing on the matter." *Cadwallader*, 155 Wn.2d at 874 (citing RCW 9.94A.530(2)).

¶25 The dissent would have us deny the State the opportunity to present evidence on remand as we did in *Lopez*, dissent at 98-99, but allowing both parties to present additional evidence is appropriate under the facts of this case, which are distinguishable from the facts in *Cadwallader* and *Lopez*. In *Cadwallader*, the State failed to allege the existence of defendant's out-of-state conviction, which was necessary to establish that his Washington conviction had not "washed out," so the State was precluded from introducing that out-of-state conviction at resentencing. In Bergstrom's case, the State did allege his prior convictions and reasonably relied on defense counsel's agreement with the State's offender score calculation.

¶26 The facts of *Lopez* are distinguishable from the facts of Bergstrom's case in that the defense in *Lopez* did not acknowledge the State's offender score calculation. Instead, Lopez's attorney specifically objected to the State's calculated offender score after the State argued Lopez was a persistent offender at the sentencing hearing and the State failed to present evidence of Lopez's prior offenses. As a result, the State was not permitted a second opportunity to present evidence on remand. In *Lopez*, the State had no reason to believe defense counsel agreed with its offender score calculation. In Bergstrom's case, the State did reason-

ably rely on defense counsel's affirmative acknowledgment and had no reason to expect it would have to provide certified copies of the prior convictions at a hearing continued to decide eligibility for EHM. The State was entitled to rely on defense counsel's affirmative acknowledgment of Bergstrom's offender score until defense counsel expressly reversed her position, which she never did.

¶27 Also here, the trial court actually deprived the State of the opportunity to bring the relevant sentencing evidence when it erroneously denied Bergstrom's motion for a continuance, even though there already had been many continuances. The trial court should have ordered an evidentiary hearing at which both sides would have had the opportunity to present evidence. Because the trial court's error effectively denied both parties the opportunity to present evidence, both parties should be allowed to present evidence on remand at a new sentencing hearing.

## IV. CONCLUSION

¶28 Given these unique circumstances—where defense counsel agreed with the offender score and the standard range and the only objection was a pro se argument at a hearing to determine the eligibility for EHM after repeated continuances—it is inequitable to deny the State on remand an opportunity to prove the existence of Bergstrom's prior convictions. We agree with the Court of Appeals decision to permit both parties to introduce additional evidence on remand given these unique facts of this case.

¶29 For these reasons, we affirm the Court of Appeals and remand for resentencing, allowing both parties to submit evidence.

MADSEN, BRIDGE, OWENS, and J.M. JOHNSON, JJ., concur.

¶30 ALEXANDER, C.J. (dissenting) — We have previously determined that "an evidentiary hearing is appropriate *only* when the defendant has failed to specifically object to

the State's evidence of the existence or classification of a prior conviction." *State v. Lopez*, 147 Wn.2d 515, 520, 55 P.3d 609 (2002) (emphasis added). The majority strays from our straightforward holding in *Lopez*, despite acknowledging that Gordon Bergstrom specifically objected, and orders an evidentiary hearing because of what it calls "unique circumstances" in this case. Majority at 98. These circumstances, the majority asserts, are an acknowledgment by Bergstrom's counsel of Bergstrom's offender score.

¶31 In my judgment, the fact that at one point Bergstrom's counsel acknowledged the offender score that the State presented is of no moment. I say that for two reasons. First, Bergstrom made a clear effort to contradict his attorney's statement by specifically objecting to the calculation of his offender score. Secondly, Bergstrom's decisions during litigation should take priority over his attorney's. Bergstrom is, after all, the client, and the attorney is to abide by the client's decisions concerning the objectives of litigation. RPC 1.2. Indeed, Bergstrom's counsel recognized as much when she said, in regard to Bergstrom's objection, "I'm not going to take a position contrary to my client's." Mot. Proceedings (Nov. 17, 2004) at 4. In that regard, the record shows the following:

> THE COURT: You want to bring up an issue on your offender's score?
>
> THE DEFENDANT [Bergstrom]: Yes, your Honor. It's been pointed out to me that RCW 9.94A.589(1)(a), it says: The current sentencing court may determine with respect to other prior adult conviction[s]—adult offenses, excuse me, for which sentences were served concurrently. Okay, they should be counted as one offense or as separate offenses using the same criminal conduct analysis found in RCW 9.94A.589, and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used. Sentencing court may presume that such other prior offenses were not the same criminal conduct. In the case of . . . computing the offender score, count all adult convictions served concurrently as one offense.

In 19—on 5/4/1990, I was—I pled two counts of forgery for prescriptions on the same instrument, which ran concurrently under Cause No. 89-1-06176-3. I believe I served a total of 22 months on that.

THE COURT: I'm sorry, which cause number is it?

THE DEFENDANT: 89-1-06176-3.

THE COURT: Right.

THE DEFENDANT: And then again on 11/4/94, for three counts of forgery, 94-1-04110-6, according to this RCW, those would be counted not as separate one, two, three, four, for 1989, and then not one, two, three for 1994, but actually as one and as one, which would bring the offender score to one, two, three, four, five, six, and the current one bringing it to seven, with respect to the court.

THE COURT: Mr. Scully [the State], would you like to respond to that?

MR. SCULLY: Your Honor, the presumption is that they're not the same criminal conduct if the prior sentencing court did not so find. I don't have the certified judgments and sentences, so I can't argue different victim or whatever, I don't know.

*Id.* at 5-7.

¶32 Bergstrom's forthright statement to the court can be viewed only as having put the State and the sentencing court "on notice" that Bergstrom was objecting to the offender score. *See State v. Ford*, 137 Wn.2d 472, 485, 973 P.2d 452 (1999) (defendant must put the trial court "on notice" of his or her objection). In response to the objection, the State essentially did nothing, indicating that it was unprepared to provide certified copies of the prior convictions. If the State thought that it had been misled by the earlier statement of Bergstrom's counsel, it had the option of seeking a continuance to obtain proof of Bergstrom's prior convictions. The State did not do so. Rather, it chose to not meet the objection. To allow the State an opportunity to meet the objection now is not in accord with our prior decisions. As we said in *Ford*, "it is 'inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not

or chose not to prove.'" *Ford*, 137 Wn.2d at 480 (quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 357, 759 P.2d 436 (1988)).

¶33 Furthermore, even if acknowledgment by Bergstrom's counsel of the State's initial calculation of his offender score is given some currency, the State's burden to prove the correct offender score is not removed. Instead, an acknowledgment is merely a factor in determining whether the State is allowed an evidentiary hearing to prove the correct offender score upon remand after appeal. *See, e.g., In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 877, 123 P.3d 456 (2005) (denying the State an evidentiary hearing upon remand despite the lack of a specific objection by the defendant). An acknowledgment is a factor "only" if the defendant has failed to specifically object. *Lopez*, 147 Wn.2d at 520. Therefore, this court's analysis should begin, and end, by determining if Bergstrom specifically objected. If it is determined that he has, remand for resentencing without an evidentiary hearing should be ordered.

¶34 Bergstrom unquestionably made a specific objection to the calculation of his offender score. Consequently, our decision in *Lopez* should control here and the matter should go back to the trial court for a resentencing hearing with the record limited to that which was presented at the prior sentencing. Because the majority, by its decision, is allowing the record to be expanded at resentencing, I dissent.

C. JOHNSON, SANDERS, and CHAMBERS, JJ., concur with ALEXANDER, C.J.

Reconsideration denied January 31, 2008.